Raphael Israel MILES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–0107–CR–267.

Court of Appeals of Indiana.

Feb. 21, 2002.

Jon Aarstad, Vanderburgh County Public Defender Agency, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

## STATEMENT OF THE CASE

Raphael Miles appeals his convictions for two counts of Dealing in Cocaine, both as Class B felonies, and Dealing in Marijuana, as a Class A misdemeanor. He raises two issues for our review, which we restate as:

1. Whether the trial court erred when it denied his motion to suppress.

2. Whether the State presented sufficient evidence to support his convictions.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 12, 1999, Detective K.V. Gieselman, an undercover narcotics investigator with the Indiana State Police, met with a confidential informant who told him that Miles was selling marijuana. Thereafter, Detective Gieselman, accompanied by the informant and the informant's girlfriend, drove to a meat market where they were to meet Miles at 6:15 p.m. When they arrived, they saw a man seated on a bicycle using a payphone. The informant said, "that's Raphael, there," referring to the man on the bicycle. The informant then yelled "Raphael" and the man hung up the telephone and rode his bicycle to the passenger window of Detective Gieselman's car. The informant said, "What's up" to Miles, and his girlfriend said, "Hi, Raphael." Miles then pulled marijuana from inside his clothing and handed it to Detective Gieselman. Detective Gieselman then asked him if he could "get some rock," meaning crack cocaine. When Miles asked him how much he wanted, Detective Gieselman asked for fifty dollars' worth. Miles pulled crack cocaine from inside his clothing and handed it to Detective Gieselman. Detective Gieselman then gave Miles $200 for both the marijuana and the crack cocaine. Detective Gieselman asked Miles if he could contact him for further transactions, and Miles gave Detective Gieselman his pager number. The transaction lasted approximately five to ten minutes.

On July 15, 1999, Detective Gieselman and the informant again met Miles near the meat market. Detective Gieselman negotiated a price and then bought from Miles 1.25 grams of cocaine. This transaction also lasted approximately five to ten minutes. After the second buy, Detective Gieselman went to the Evansville Police Department records room and asked to see a photograph of Miles in order to verify that Miles was the person from whom he had bought cocaine and marijuana, and to obtain his social security number and date of birth.

The State charged Miles with two counts of dealing in cocaine and one count of dealing in marijuana.[1] Miles filed a motion to suppress "both out of court identification and any in court identification made by [Detective] Gieselman of the Indiana State Police." After a hearing, the trial court denied the motion.

At trial, Detective Gieselman identified Miles as the person from whom he bought marijuana and cocaine on July 12, 1999 and July 15, 1999. Miles did not object to this in-court identification. The jury found Miles guilty on all three counts and the trial court entered judgment accordingly.

## DISCUSSION AND DECISION

### Issue One: Pre-trial Identification

Miles contends that the trial court erred in denying his motion to suppress Detective Gieselman's in-court identification of him. He argues that Detective Gieselman's improper pre-trial identification of him was unnecessarily suggestive, tainting any in-court identification and rendering it inadmissible. We must disagree.

▮ We review a denial of a motion to suppress in a manner similar to other sufficiency matters. *Morales v. State*, 749 N.E.2d 1260, 1265 (Ind.Ct.App.2001). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, we must also consider the uncontested evidence favorable to the defendant. *Id.*

▮ Miles claims that the trial court's denial of his motion to suppress rendered his trial unfair. However, Miles did not object to the identification evidence at his trial. A defendant must reassert his objection at trial contemporaneously with the introduction of the evidence to preserve the error for appeal. *Carter v. State*, 754 N.E.2d 877, 881 n. 8 (Ind.2001); *see also Helton v. State*, 539 N.E.2d 956, 957 (Ind. 1989) ("Denial of a pre-trial motion to suppress is not a final ruling; to preserve error, objection must be made when the evidence is introduced at trial"). The admission of allegedly tainted identification evidence does not constitute fundamental error.[2] *Austin v. State*, 603 N.E.2d 169,

---

1. Miles was originally tried on these three counts in May 2001, but the trial ended in a hung jury. The retrial took place in June 2001.

2. Miles argues that, despite his waiver, the trial court's denial of his motion to suppress was fundamental error. He relies on the reasoning in *Pemberton v. State*, 560 N.E.2d 524 (Ind.1990), and *Glaser v. State*, 575 N.E.2d 329 (Ind.Ct.App.1991). In both cases, the courts found ineffective assistance of counsel for failure to object to a witness' in-court identification. *See Pemberton*, 560 N.E.2d at 526–27; *see Glaser*, 575 N.E.2d at 330–32. However, Miles expressly declines to assert that his trial counsel was ineffective in failing to object to Detective Gieselman's in-court identification. Instead, "he leaves this issue to future counsel should he have occasion to file a Petition for Post-conviction Relief." Brief of Appellant at 18. Because he does not argue ineffective assistance of trial counsel, we need not discuss this assertion.

171 (Ind.Ct.App.1992) *trans. denied.* Thus, Miles has waived consideration of any error resulting from admission of the in-court identification evidence by his failure to object at trial.[3] *Id.*

Waiver notwithstanding, Detective Gieselman's pre-trial identification was not impermissibly suggestive so that it tainted his in-court identification. A conviction based on eyewitness identification at trial following a pre-trial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. *O'Connell v. State,* 742 N.E.2d 943, 948 (Ind.2001); *see also Swigeart v. State,* 749 N.E.2d 540, 544 (Ind.2001) (holding due process requires suppression of testimony regarding pre-trial identification when procedure employed is impermissibly suggestive). Our supreme court has long held that the extrajudicial exhibition of a single photograph to a victim is an unduly suggestive identification procedure. *Brown v. State,* 577 N.E.2d 221, 225 (Ind.1991) (citing *Parker v. State,* 265 Ind. 595, 358 N.E.2d 110, 112 (1976)). While we agree with this principle, we find it inapplicable in this case, where Detective Gieselman is both the investigator and the witness to the offense.

While Indiana courts have not addressed this particular issue, other jurisdictions have held that an arresting officer's out-of-court identification of a defendant by viewing a single photograph of the defendant was not unduly suggestive. *See, e.g., State v. Potter,* 452 N.W.2d 71, 72 (N.D.1990); *State v. Manna,* 130 N.H. 306, 539 A.2d 284, 287 (1988). A police officer could not be found through the photo identification process to have impermissibly suggested to *himself* the person he arrested was the defendant. *Manna,* 539 A.2d at 287 (emphasis supplied). The *Manna* court agreed that the use of a single photograph would be highly suggestive in a case where the police were working with a victim or potential untrained lay witness to obtain an identification. *Id.* The court recognized that such cases "are aimed at deterring police misconduct." *Id.* But where, as here, the police officer is both the investigator and the witness, police misconduct is not at issue. *See id.* It would be unreasonable to require the arresting officer to request another police officer to prepare a photo array so as to increase the reliability of the arresting officer's photo identification. *Id.*

The reasoning of the New Hampshire Supreme Court applies here. After his second "hand-to-hand" transaction with Miles on July 15, 1999, Detective Gieselman went to the Evansville Police Department records room and requested to see a photograph of Raphael Miles. Gieselman testified at the suppression hearing that he requested the photograph to verify Miles' identity and to obtain his social security

---

**3.** Miles also asserts that the error was adequately preserved when he renewed his motion to suppress at the beginning of trial. He relies on *Zion v. State,* 266 Ind. 563, 365 N.E.2d 766, 768 (1977), in which our supreme court held that a pretrial motion to suppress evidence of a pre-trial identification satisfied the "contemporaneous objection" rule. However, the majority of our supreme court disapproved of *Zion* in *Pointon v. State,* 267 Ind. 624, 372 N.E.2d 1159, 1161 (1978), reaffirming the long line of cases in Indiana which require that even though a motion to suppress has been overruled prior to trial, when the evidence is later offered at trial no error will be preserved unless there is an objection at that time. *See Carter,* 754 N.E.2d at 881 n. 8. Therefore, Miles was required to reassert his objection contemporaneously with Detective Gieselman's in-court identification to preserve the issue. *Id.*

number and date of birth. Given these circumstances, Gieselman acted as a reasonable police officer would to complete his investigation.[4] *See id.* (finding police officer acted reasonably under circumstances by obtaining photograph of suspect to verify another witness' story and complete investigation.) We hold that Detective Gieselman did not impermissibly suggest to himself that Miles was the individual with whom Gieselman had made the drug transactions. *See id.*

◼ Notwithstanding the fact that Detective Gieselman was both the investigator and the witness to Miles' offense, we find the probability of misidentification highly unlikely given the totality of the circumstances. *See Vanzandt v. State,* 731 N.E.2d 450, 453 (Ind.Ct.App.2000). Factors to be considered in evaluating the likelihood of misidentification include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, and (4) the level of certainty demonstrated by the witness. *See id.*[5]

Detective Gieselman had the opportunity to observe Miles on two different occasions. During the July 12, 1999, transaction, the confidential informant told Detective Gieselman that the man on the bicycle was Raphael Miles, and Miles responded when the informant yelled "Raphael." During each hand-to-hand buy, Detective Gieselman was able to observe Miles' face from two and a half to three feet away for a period of approximately five to ten minutes. Given Detective Gieselman's training as an undercover narcotics investigator, it is reasonable to infer that he paid particular attention to Miles during both transactions to facilitate Miles' arrest. Furthermore, Detective Gieselman testified that he verified Miles' identity upon seeing the single photograph at the Evansville Police Department records room, so he must have been certain upon seeing the photograph that Miles was the man from whom he had bought drugs.[6] Considering this evidence, Detective Gieselman's pre-trial identification of Miles did not give rise to a substantial likelihood of misidentification and was not impermissibly sugges-

4.  Miles argues that the police department employee who showed Detective Gieselman Miles' photograph impermissibly suggested to Detective Gieselman that Miles was the suspect. This argument is wrong. Detective Gieselman appeared at the records room and requested to see a photograph of Raphael Miles to verify his identity and obtain his social security number and date of birth. The police department employee was not attempting to influence Detective Gieselman's identification of Miles, as Miles asserts. Indeed, the employee was simply responding to a request to see Miles' photograph. The employee's presentation of the photograph to Detective Gieselman was not unduly suggestive.

5.  The State, citing *Adkins v. State,* 703 N.E.2d 182 (Ind.Ct.App.1998), attempts to analogize the facts of this case to the procedure of a one-on-one identification procedure, other-

wise known as a "show-up" confrontation. In *Adkins,* we recognized that a pre-trial confrontation occurring immediately after the commission of the crime is not per se unduly suggestive even though the accused is the only suspect present. *Id.* at 185. In recognizing that a one-on-one identification procedure is proper only when reliable under the totality of the circumstances, this court offered several factors to be considered. *Id.* Since the factors proposed in *Adkins* are essentially the same as the factors proposed in *Vanzandt,* we need not separately address this argument.

6.  As to the third test, accuracy of prior description, where Detective Gieselman was both the witness and the investigator, there would be no occasion for him in his role as a witness to describe Miles to himself in his role as an investigator. *See Manna,* 539 A.2d at 287–88.

tive.[7] The trial court did not err in denying Miles' motion to suppress and properly admitted Detective Gieselman's in-court identification.

### Issue Two: Sufficiency of the Evidence

Miles next contends that the State did not present sufficient evidence to sustain his convictions. Again, we must disagree. In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of witnesses. *Ferrell v. State*, 746 N.E.2d 48, 50 (Ind.2001). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* To prove the offense of dealing in cocaine, as a Class B felony, the State was required to show that Miles knowingly or intentionally delivered cocaine to Detective Gieselman. *See* Ind. Code § 35-48-4-1. To prove the offense of dealing in marijuana, as a Class A misdemeanor, the State was required to show that Miles knowingly or intentionally delivered marijuana to Detective Gieselman. *See* Ind.Code § 35-48-4-10.

Miles argues that because Detective Gieselman's in-court identification of him should not have been admitted, the evidence was insufficient to identify him as the man who sold Detective Gieselman cocaine and marijuana. However, we have concluded that the trial court properly admitted Detective Gieselman's in-court identification. And the law is well settled that the uncorroborated testimony of one witness may be sufficient to sustain a conviction on appeal. *Guadian v. State*, 743 N.E.2d 1251, 1253 (Ind.Ct.App.2001). Here, Detective Gieselman repeatedly testified that Miles was the man from whom he bought cocaine and marijuana and unequivocally identified him at trial. Thus, the evidence was sufficient to sustain Miles' convictions.

Affirmed.

BAKER, J., and MATTINGLY–MAY, J., concur.

---

7. Miles further asserts the State did not meet its burden to show, by clear and convincing evidence, an independent basis for Detective Gieselman's in-court identification on Miles. Miles relies on the premise that a witness who participates in an unduly suggestive pre-trial procedure may identify the accused in court only if the totality of the circumstances clearly and convincingly shows that the witness has a basis for the in-court identification independent of the pre-trial identification. *Jones v. State*, 749 N.E.2d 575, 581 (Ind.Ct.App.2001). However, the State was only required to prove an independent basis for Detective Gieselman's in-court identification of Miles if this court found that his pre-trial identification was unduly suggestive. *O'Connell*, 742 N.E.2d at 948. Because we find Detective Gieselman's pre-trial identification of Miles was not unduly suggestive, we need not address Miles' argument.