**Larry HYPPOLITE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A04–0107–PC–00314.

Court of Appeals of Indiana.

Sept. 6, 2002.

Larry Hyppolite, Greencastle, IN, Appellant Pro Se.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Larry Hyppolite was convicted following a jury trial of dealing in cocaine, a Class B felony, and sentenced to twenty years incarceration. He initiated a direct appeal from his conviction, but subsequently sought and was granted permission to dismiss his appeal without prejudice to pursue post-conviction relief. His petition for post-conviction relief was denied. Hyppolite now appeals, alleging errors arising both from the direct appeal and from denial of post-conviction relief.[1] We affirm.

---

**1.** In *Davis v. State,* 267 Ind. 152, 368 N.E.2d 1149 (1977), our supreme court held that an

*Issues*

Hyppolite raises the following restated issues on direct appeal: [2]

1. Whether the trial court properly admitted certain evidence;

2. Whether the photographic identification of Hyppolite was impermissibly suggestive;

3. Whether the trial court properly denied Hyppolite's motions for continuance;

4. Whether the trial court properly denied Hyppolite's motions to replace a juror and for a mistrial; and

5. Whether the evidence was sufficient to support Hyppolite's conviction.

In addition, Hyppolite raises the following issues on denial of his petition for post-conviction relief:

6. Whether the State committed misconduct in failing to provide exculpatory evidence;

7. Whether the post-conviction court properly denied admission of Hyppolite's alleged newly discovered evidence; and

8. Whether Hyppolite received the effective assistance of trial counsel.

*Facts and Procedural History* [3]

In October 1996, the Madison County Drug Taskforce was investigating Maurice "Kojak" Fuller as a possible drug dealer.

Officer Clifford Cole arranged to buy cocaine from Fuller on October 18, 1996. When Officer Cole went to meet Fuller, he was equipped with a transmitter and followed by three other members of the Drug Task Force who were to record the transaction and provide backup. When Fuller arrived, he told Officer Cole that he did not have the cocaine, then entered Officer Cole's car and told him to follow a blue Cadillac. When the Cadillac parked, Officer Cole parked behind it. A man later identified as Hyppolite exited the Cadillac and walked up to the passenger side of Officer Cole's car. Hyppolite crouched down or bent over and spoke to Fuller through the passenger window and Officer Cole had a plain view of him throughout the one to two minute transaction. Hyppolite handed Fuller two pieces of cocaine and the two discussed the price. Fuller gave Hyppolite $20.00 and Hyppolite left in the Cadillac. Officer Cole did not recognize Hyppolite.

Several days later, one of the officers who had worked surveillance with Officer Cole on October 18, 1996, obtained Hyppolite's driver's license from another investigator. The officer showed the license to Officer Cole, and Officer Cole identified the man in the license photograph as the man who had sold the cocaine on October 18.

Hyppolite was charged with dealing in cocaine and he was tried to a jury. The

appellant from a criminal conviction may seek to bring a petition for post-conviction relief pending resolution of his appeal by obtaining leave from the appellate court. If the appellate court preliminarily determines that the motion has sufficient merit, the entire case is remanded for consideration of the petition for post-conviction relief. Such remand terminates the appeal. If the court then denies the petition for post-conviction relief, the petitioner may appeal the denial. In this new appeal any of the issues raised in the original appeal may be incorporated. *Id.*

at 1151 (citing *Logal v. Cruse,* 267 Ind. 83, 368 N.E.2d 235 (1977), *cert. denied,* 435 U.S. 943, 98 S.Ct. 1523, 55 L.Ed.2d 539 (1978)).

2. Because Hyppolite presents both direct appeal and denial of post-conviction relief issues in this consolidated appeal, the standard of review differs depending upon the procedural posture of the issue.

3. Hyppolite's petition for oral argument is hereby denied.

jury found him guilty as charged and he was sentenced to twenty years at the Indiana Department of Correction, with eight years suspended. Hyppolite initiated a direct appeal of his conviction. He subsequently moved to dismiss his direct appeal without prejudice in order to file a petition for post-conviction relief. This court granted his motion and remanded to the trial court. Hyppolite then filed a petition for post-conviction relief, alleging newly discovered evidence, prosecutorial misconduct, and ineffective assistance of counsel. After a hearing, his petition was denied, and he initiated a timely appeal of that denial. His direct appeal and appeal from the denial of post-conviction relief have been consolidated by order of this court for consideration herein.

Additional facts will be provided as necessary.

### Discussion and Decision

### I. Direct Appeal

### A. Admission of Evidence

Hyppolite first contends that the trial court erred in permitting the State to introduce evidence of his use of aliases, a photograph taken when he was arrested, and the rebuttal testimony of his probation officer.

#### 1. Standard of Review

■ The admission of evidence is within the sound discretion of the trial court, and the decision to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Prewitt v. State*, 761 N.E.2d 862, 869 (Ind. Ct.App.2002). An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In reviewing the admissibility of evidence, we will only consider the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. *Id.*

#### 2. Aliases

■ At trial, the State offered into evidence the driver's license from which Officer Cole had identified Hyppolite as the person who sold cocaine to him on October 18, 1996. The driver's license was in the name "Ricarito Montana." Hyppolite objected to the admission of this evidence and now claims that the admission of this evidence violated Evidence Rule 404(b) and was highly prejudicial.

Evidence Rule 404(b) prohibits admission of evidence of "other crimes, wrongs, or acts" to prove the character of the person in order to show action in conformity therewith. However, it may be admissible for other purposes, such as to prove identity. Evid. R. 404(b). Hyppolite's identity was a central issue in this case. Hyppolite filed a notice of alibi and specifically denied that he was the person who sold the cocaine to Officer Cole on October 18. Officer Cole did not recognize Hyppolite during the transaction and did not know his name. The driver's license photograph was how he was able to identify Hyppolite as the dealer. To the extent admission of the driver's license constituted admission of "other crimes, wrongs or acts," it was highly probative of identity and thus admissible. The trial court did not err in admitting this evidence.

On cross-examination of Hyppolite, the State asked about five different aliases, three of which Hyppolite admitted to having used. Exhibits Volume 2, page 454–56. Again, he claims that admission of this evidence was highly prejudicial as it "created a connotation of criminality." Brief of Appellant at 6. We disagree.

In *Moore v. State*, 156 Ind.App. 687, 298 N.E.2d 17 (1973), this court disapproved the unnecessary use of aliases because it

would not be "difficult to conceive a situation wherein the unnecessary, or excessive, or unproved use of aliases would create a connotation of criminality sufficient to thwart the fairness of the trial." *Id.* at 18. However, we do not believe that the use of Hyppolite's aliases in this case was "unnecessary, excessive, or unproved." As stated above, Hyppolite's identity as the drug dealer was at issue in this case. He is a native Haitian and apparently spoke at trial with an accent. The voice of the drug dealer on the tape made by Officer Cole during the transaction apparently betrays no accent.[4] That some of Hyppolite's aliases are clearly American names tends to supports the State's assertion that Hyppolite could be the man on the tape because he spoke with more than one accent, depending upon which alias he was using. It could be considered incongruous that a man by the name of "David Conrad," for instance, would speak with a strongly Haitian accent. Moreover, as the driver's license attests, Hyppolite was at the time of the drug transaction using at least one alias. The use of an alias was not so far removed from the time of the alleged crime as to be irrelevant to this case. Thus, in this particular circumstance, we hold that the trial court did not err in admitting evidence of Hyppolite's aliases. *See Edgecomb v. State,* 673 N.E.2d 1185, 1195 (Ind.1996) (reference to defendant's alias in charging information and jury instructions necessary to avoid jury confusion because defendant herself referred to both her real name and her alias during proceedings).

### 3. "Mug Shot"

■ Hyppolite next contends that the trial court erred in admitting into evidence a photograph of him taken at the time of his arrest because "mug shots" are highly prejudicial in that they imply that the individual has been previously arrested.

■ Generally, evidence of a defendant's prior criminal history is highly prejudicial and is not admissible. *Boatright v. State,* 759 N.E.2d 1038, 1042 (Ind.2001). However, mug shots are not per se inadmissible. They are admissible if (1) they are not unduly prejudicial and (2) they have substantial independent probative value. *Id.* (quoting *Wisehart v. State,* 693 N.E.2d 23, 47 (Ind.1998), *cert. denied,* 526 U.S. 1040, 119 S.Ct. 1338, 143 L.Ed.2d 502 (1999)). In this case, the "mug shot" appears to be a Polaroid picture showing a head-on view of Hyppolite and marked only with handwritten notations below the picture; it is not the typical "mug shot" which shows the "well-known frontal and profile view of a person with prison numbers and legend thereon referring to arrests or convictions...." *Teague v. State,* 269 Ind. 103, 379 N.E.2d 418, 422 (1978). Thus, there is nothing unduly prejudicial about the picture itself. Moreover, it has probative value in that after Officer Cole identified the man shown in "Ricarito Montana's" driver's license photograph as the man who sold cocaine on October 18, 1996, he was shown this picture which carried Hyppolite's real name. Thus, it was a tool in identifying Hyppolite as the man who had sold cocaine to Officer Cole. The trial court did not err in admitting this photograph into evidence.

### 4. Rebuttal Testimony

Finally, Hyppolite contends that the trial court erred in admitting the rebuttal testimony of Probation Officer Jerry Considine. Considine was called as a rebuttal witness by the State to contradict testimony given by Hyppolite. In the course of testifying, Considine stated that Hyppolite

---

4. The record before us does not include the tape of the transaction.

"requested permission" to travel out of state, referred to Hyppolite seeking a "travel permit," and stated that he met with Hyppolite "to do the pre-sentence investigation." Exhibits Volume 2, pages 473–75. Hyppolite claims this clearly and improperly implied to the jury that he was already on probation for another offense.

However, Hyppolite did not object to these specific references nor did he request an admonishment to the jury. Thus, the issue is waived unless he can show fundamental error. The fundamental error doctrine applies only when the actual or potential harm cannot be denied and the error is so prejudicial to the rights of the defendant that a fair trial is impossible. *Carter v. State*, 754 N.E.2d 877, 881 (Ind.2001), *petition for cert. filed* (Apr. 17, 2002) (No. 01–10000). Our supreme court has recently re-emphasized the extremely narrow applicability of the doctrine and stated that an appellate court receiving contentions of fundamental error need only expound upon those it thinks warrant relief; otherwise, it is adequate to note that the claim has not been properly preserved. *Id.* See also *Taylor v. State*, 717 N.E.2d 90, 93–94 (Ind.1999). As the references were brief and as Considine was properly called as a rebuttal witness to contradict or disprove evidence offered by Hyppolite, we do not believe that any error in admission of these statements was so highly prejudicial to Hyppolite as to render a fair trial impossible.

### B. Photographic Identification

Hyppolite next contends that the pretrial photographic identification of him by Officer Cole was impermissibly suggestive because Officer Cole was shown but a single photograph.

The Due Process Clause of the Fourteenth Amendment requires suppression of testimony concerning a pre-trial identification when the procedure employed is impermissibly suggestive. *Harris v. State*, 716 N.E.2d 406, 410 (Ind. 1999). A photographic array is impermissibly suggestive if it raises a substantial likelihood of misidentification given the totality of the circumstances. *Id.* A pre-trial identification may occur in a manner so suggestive and conducive to mistaken identification that permitting a witness to identify a defendant at trial would violate the Due Process Clause. *Young v. State*, 700 N.E.2d 1143, 1146 (Ind.1998). Nevertheless, a witness who participates in an improper pre-trial identification procedure may still identify a defendant in court if the totality of the circumstances shows clearly and convincingly that the witness has an independent basis for the in-court identification. *Id.*

To determine whether a witness had an independent basis for the in-court identification, we consider the following factors: the amount of time the witness was in the presence of the defendant; the distance between the two; the lighting conditions; the witness' degree of attention to the defendant; the witness' capacity for observation; the witness' opportunity to perceive particular characteristics of the perpetrator; the accuracy of any prior description of the perpetrator by the witness; the witness' level of certainty at the pretrial identification; and the length of time between the crime and the identification. *Swigeart v. State*, 749 N.E.2d 540, 544 (Ind.2001).

We note first that Hyppolite did not object to Officer Cole's testimony regarding his pre-trial identification. Thus, the issue is waived. *See Lewis v. State*, 755 N.E.2d 1116, 1122 (Ind.Ct.App. 2001) ("Failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error upon

appeal."). Moreover, the admission of allegedly tainted identification evidence does not constitute fundamental error. *Miles v. State*, 764 N.E.2d 237, 239 (Ind.Ct.App. 2002), *trans. denied.* However, even if there was error in admitting evidence of Officer Cole's pre-trial identification of Hyppolite, there was an independent basis for Officer Cole's in-court identification of him, and thus, no due process violation.[5] Officer Cole testified that as he sat in the driver's seat of the car during the transaction he observed Hyppolite at the passenger window for a minute or two. He was able to clearly see Hyppolite's face during that time, and was focused only on Hyppolite throughout the transaction. As a police officer, "part of [the] job is to identify suspects...." Exhibits Volume 1, page 181. Thus, the totality of the circumstances shows that Officer Cole had an independent basis for the in-court identification and there was no error.

### C. Motions for Continuance

Hyppolite contends that the trial court erred in denying his motions for continuance. Two motions were made in relation to the audiotape of the drug buy, one on the morning trial began and the other during trial when the tape was admitted into evidence. The third motion requested a one-week continuance to find the owner of the Cadillac used in the drug buy.

#### 1. Standard of Review

 Rulings on non-statutory motions for continuance lie within the discretion of the trial court and will be reversed only for an abuse of that discretion and resultant prejudice. *Maxey v. State*, 730 N.E.2d 158, 160 (Ind.2000). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Palmer v. State*, 704 N.E.2d 124, 127 (Ind.1999). Continuances for additional time to prepare for trial are generally disfavored, and courts should grant such motions only where good cause is shown and such a continuance is in the interest of justice. *Id.*

#### 2. Continuance for Voice Expert

 On the morning trial was to begin, Hyppolite requested a continuance in order to get a voice expert to examine the audiotape of the drug transaction. Hyppolite did not claim that he had not received the tape in adequate time; rather, he claimed that he thought the State had no intention of claiming the voice on the tape to be his because of the obvious disparity in accents. The trial court denied the motion. In *Starks v. State*, 517 N.E.2d

**5.** In *Miles,* this court held in a case of first impression that an arresting officer's out-of-court identification of a defendant by viewing a single photograph of the defendant is not unduly suggestive because the cases prohibiting showing a single photograph to a victim or untrained lay witness are aimed at deterring police misconduct. 764 N.E.2d at 240. The investigating officer went to the police department records room and requested to see a picture of the defendant to verify his identity and to obtain his social security number and date of birth. Under these circumstances, the investigating officer was acting as a reasonable police officer would to complete his investigation and did not impermissibly suggest to himself that the defendant was the individual with whom he had engaged in drug transactions. *Id.* at 241. The defendant therein had also claimed that the police department employee in the records department who showed the photograph to the officer had impermissibly suggested to the officer that the defendant was the suspect. We dismissed this claim because the officer specifically asked to see the defendant's photograph. In this case, another officer did bring the single photograph to Officer Cole for identification. However, given Hyppolite's waiver of this issue and our determination that the in-court identification was independently supported, we need not decide whether the out-of-court identification procedure employed here was impermissibly suggestive.

46 (Ind.1987), *modified on reh'g*, 523 N.E.2d 735 (Ind.1988), our supreme court concluded that the trial court did not abuse its discretion in denying a defendant's request for continuance to obtain a handwriting analysis expert to examine signatures appearing on a lease. *Id.* at 51. The court reasoned that the lease was available for review prior to trial, but that the defendant failed to use due diligence in having the exhibit analyzed. *Id.* In *Trotter v. State*, 733 N.E.2d 527 (Ind.Ct.App.2000), *trans. denied*, this court held that the trial court was within its discretion to deny a continuance sought in the middle of trial to investigate a discrepancy in a videotape because the defendant had the opportunity to examine the videotape and investigate the reasons for the discrepancy prior to trial. *Id.* at 533.

■ As in *Starks* and *Trotter*, Hyppolite received the audiotape in advance of trial and had ample opportunity to listen to and examine the tape. Clearly, the fact that the State was proceeding with the prosecution despite the obvious disparity between the voice on the tape and the voice Hyppolite exhibited in court proceedings indicated that there was some additional evidence to suggest that the two were the same. It should not have occurred to Hyppolite for the first time on the morning of trial that he might want a voice expert to examine the tape and perhaps testify at trial.[6] The trial court did not abuse its discretion in denying Hyppolite's motion for continuance.

### 3. Continuance for Car Owner

Hyppolite also requested a one-week continuance in the middle of trial to find and interview the man to whom the blue Cadillac used in the drug transaction was registered. On redirect examination, Officer Cole testified that he had traced the plate number from the blue Cadillac to the owner of that car and had obtained a photograph of the owner to determine that he was not the man who had sold the drugs on October 18, 1996. During a bench conference, Hyppolite requested the continuance to find the owner of the Cadillac because the information regarding him was not provided in discovery. The trial court told Hyppolite he could attempt to contact the owner as the trial progressed and the State provided the name and address. Defense counsel did in fact make contact with the registered owner's mother, who came into court and testified that in 1996, her son did not own a blue Cadillac, although his uncle did. She also testified that she had listened to the tape of the drug transaction and had not heard any voices she recognized, either her son's or his uncle's.

■ We agree that the probable cause affidavit, which Hyppolite claims was the only documentation provided to him by the State in discovery, does not mention that a vehicle was used in the transaction. However, the probable cause affidavit in general is extremely brief and provides virtually no facts regarding the transaction other than the fact that it occurred. As the court noted in denying Hyppolite's request for a continuance, when the deposition of a material witness is not taken, there is the risk of discovering certain facts for the first time at trial. The trial court heard Hyppolite's argument why a continuance to find this person was essential to a fair trial and denied the motion. Hyppolite has not demonstrated that had the contin-

---

**6.** Additionally, as Hyppolite was represented at trial by a public defender, any expert would have been appointed at public cost. The appointment of experts is also a matter within the discretion of the trial court and a request may be denied if it is not timely made. *Cox v. State*, 696 N.E.2d 853, 862 (Ind.1998).

uance been granted, he would have been able to discover any other material or exculpatory evidence. We cannot say that the trial court abused its discretion in this instance in denying the continuance.

### D. Motion for Mistrial

After the close of the evidence, but prior to closing arguments, Hyppolite moved for a mistrial because of a situation with a juror. When that motion was denied, he asked that the juror be removed and replaced with an alternate. That request, too, was denied. The trial court did, however, admonish the jury. Hyppolite now claims error in the trial court's denial of his motions.

#### 1. Standard of Review

■■■■ A mistrial is an extreme remedy warranted only when no other curative measure will rectify the situation. *DeBerry v. State*, 659 N.E.2d 665, 669 (Ind.Ct. App.1995). Whether to grant a motion for a mistrial is a matter committed to the sound discretion of the trial court. *Id.* When determining whether a mistrial is warranted, the court on review must consider whether the defendant was placed in a position of grave peril to which he should not have been subjected. *Id.*

■■■■ Moreover, trial courts have broad discretion in determining whether to replace a juror with an alternate, and we will only reverse such determinations where we find them to be arbitrary, capricious or an abuse of discretion. *May v. State*, 716 N.E.2d 419, 421 (Ind.1999). We defer substantially to the trial court on this point because it sees jurors firsthand and is in a much better position to assess a juror's ability to serve without bias or intimidation and decide the case according to law. *Jervis v. State*, 679 N.E.2d 875, 881–82 (Ind.1997).

#### 2. Denial of Motion for Mistrial and Dismissal of Juror

On the morning after the close of evidence and prior to the parties' closing arguments, juror Andrea Misner reported to some or all of her fellow jurors in the jury assembly room that her mother-in-law, whose last name is also "Misner," works at the county jail. The night before, Mrs. Misner told Andrea that Hyppolite had approached her at the jail and asked if she was related to "Andrea Misner." When Mrs. Misner asked why he wanted to know, Hyppolite stated that Andrea Misner was a juror in his trial. Andrea wondered if this was something she should report to the court. Her fellow jurors encouraged her to do so. When the trial judge and the parties arrived, they met with Andrea in chambers and the judge asked her if she felt this situation created a problem for her. Andrea responded that it did not, and that she felt she could still be fair and impartial and wished to remain on the jury. Hyppolite requested a mistrial, which the trial court denied. Hyppolite then requested that she be removed from the jury and replaced with an alternate, which request was also denied. Hyppolite then requested an admonishment to the jury, which the trial court gave:

> [Y]ou all know that when Ms. Misner came in this morning she disclosed to some or all of you that she had had a conversation with her mother-in-law, who's part of the jail civilian staff, about a conversation that her mother-in-law and Mr. Hyppolite had had, and I want to remind you of what I told you at the beginning of these proceedings and what I will tell you again when it comes my time to do final instructions, that when ultimately this case is given to you and you make a decision, you make it based upon the evidence that you've heard in court and that alone and not about any

other extraneous matters whether it might be that conversation or anything else.

Exhibit Volume 3, page 508.

 Hyppolite contends that Andrea's failure to disclose during voir dire that a family member was employed by the sheriff's department and her revealing to other jurors a conversation she had with that family member about Hyppolite was misconduct warranting a mistrial or at least her dismissal from the jury. To be entitled to a mistrial, Hyppolite has to demonstrate that Andrea's conduct was so prejudicial that it had a "probable persuasive effect on the jury's decision." *Williams v. State*, 755 N.E.2d 1128, 1133 (Ind.Ct.App.2001), *trans. denied.* Andrea related to the court that she shared the conversation with the other jurors in order to assess whether or not she needed to disclose the conversation to the court. It seems from the record that she merely said to the other jurors something along the lines of, "Hyppolite spoke to my mother-in-law at the jail last night and asked if she was related to me. Should I tell the court?" The comment, under the circumstances, seems fairly innocuous and as Andrea specifically told the court she could continue to be a fair and impartial juror, we do not see that Hyppolite has been exposed to any grave peril which only a mistrial or Andrea's dismissal from the jury could have rectified. The trial court gave the jury an admonishment concerning the situation, and that is presumed to cure any error. *Hackney v. State*, 649 N.E.2d 690, 694 (Ind.Ct.App.1995), *trans. denied* ("A proper admonishment to the jury is presumed to cure any alleged error, unless the contrary is shown.").

### E. Sufficiency of the Evidence

Finally on direct appeal, Hyppolite challenges the sufficiency of the evidence to support his conviction.

#### 1. Standard of Review

 Our standard of review for sufficiency claims is well settled. We will not reweigh the evidence or assess the credibility of witnesses. Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Farris v. State*, 753 N.E.2d 641, 647 (Ind.2001).

#### 2. Evidence of Dealing

 Hyppolite contends that the only evidence that he was the person who sold drugs on October 18, 1996, to Officer Cole was Officer Cole's own testimony. Because the dealer's voice on the audiotape had no accent and because Hyppolite himself spoke at trial with an accent, Hyppolite contends that the verdict is against the weight of the evidence. However, taking the evidence most favorable to the State, Officer Cole unequivocally stated that Hyppolite was the man who sold the drugs that night. He testified to the conditions under which he observed Hyppolite during the transaction. He acknowledged the disparity in accent and nonetheless identified Hyppolite as the dealer. It was for the jury to weigh the evidence and the credibility of the witnesses. Officer Cole's testimony is sufficient to support the verdict.

### II. Post–Conviction Appeal[7]

#### A. Standard of Review

 Under the rules of post-conviction relief, the petitioner must establish

---

7. We note that neither party has provided to us as part of an appendix the post-conviction

the grounds for relief by a preponderance of the evidence. Ind. Post Conviction Rule 1, § 5. A petitioner who has been denied post-conviction relief appeals from a negative judgment, and he must convince the appellate court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *McCary v. State,* 761 N.E.2d 389, 391 (Ind.2002). In other words, we "will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." *Miller v. State,* 702 N.E.2d 1053, 1058 (Ind.1998), *cert. denied,* 528 U.S. 1083, 120 S.Ct. 806, 145 L.Ed.2d 679 (2000) (citations omitted).

### B. Prosecutorial Misconduct

Hyppolite first claimed prosecutorial misconduct in the withholding of valuable discovery, specifically, the entire tape on which the October 18, 1996, drug buy was recorded and information regarding the owner of the Cadillac used in the transaction. He also claimed prosecutorial misconduct in misleading the defense into believing that a voice expert would not be necessary.

▆▆▆ A claim of prosecutorial misconduct requires a determination that there was misconduct by the prosecutor and that the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Coleman v. State,* 750 N.E.2d 370, 374 (Ind.2001). The gravity of peril is measured not by the degree of the misconduct but by the probable persuasive effect on the jury's decision. *Id.*

▆▆▆ "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To prevail on a *Brady* claim, a defendant must establish: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial. *Minnick v. State,* 698 N.E.2d 745, 755 (Ind.1998), *cert. denied,* 528 U.S. 1006, 120 S.Ct. 501, 145 L.Ed.2d 387 (1999). Evidence is "material" only if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (quoting *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). However, the State will not be found to have suppressed material information if that information was available to a defendant through the exercise of reasonable diligence. *Conner v. State,* 711 N.E.2d 1238, 1246 (Ind.1999), *cert. denied,* 531 U.S. 829, 121 S.Ct. 81, 148 L.Ed.2d 43 (2000).

▆▆▆ As for the tape, the post-conviction court noted that the portion of the tape provided to Hyppolite was the only portion of the tape pertinent to the October 18, 1996, transaction with which Hyppolite was charged. The balance of the tape recorded transactions involving other drug buys and other defendants. Accordingly, it appears that Hyppolite failed to show there was any exculpatory evidence to be gained from the portion of the tape not provided to him by the State. As the post-conviction court was presumably pro-

court's order denying Hyppolite's petition for post-conviction relief. *See generally* Ind. Appellate Rule 50. We have, however, found

this order attached to Hyppolite's Notice of Appeal.

vided the tape and able to listen to the entirety of it in making its determination, we defer to its findings.

■ As for information about the owner of the car, Hyppolite asserted in his post-conviction petition that "[e]vidence the defense was able to gather during the trial showed that at least one (1) person with ties to the vehicle fit the description of the seller . . . ." Appellant's Appendix at 126. We note that Hyppolite was able to elicit this descriptive information from a witness during trial. The jury apparently gave it no credence. We acknowledge that Officer Cole filed a "Supplemental Case Report" which listed the Cadillac's plate number and registered owner information which was apparently never provided to the defense. However, given the information the defense was able to elicit during trial, we cannot say that Hyppolite was placed in a position of grave peril by the State's failure to disclose this information and thus he has failed to show that the post-conviction court's denial of his petition on this ground was erroneous.

■ Finally, Hyppolite contends that the State misled him into believing he did not need to enlist a voice expert to examine the audiotape. Even if the State's comments could be construed as misleading, we see no grave peril. It seems that the voice on the tape Officer Cole identified as being the dealer's and the voice Hyppolite used at trial were polar opposites—unaccented English versus a Haitian accent—and yet the jury believed Officer Cole's eye-witness identification of Hyppolite as the dealer. This is not a case of a "close call" in which a voice expert's testimony would be necessary to supplement the jury's understanding of the intricacies of voice identification. To the extent the State's conduct led to the defense failing to procure a voice expert, it did not subject Hyppolite to grave peril.

### C. Admissibility of Newly Discovered Evidence

Hyppolite also sought post-conviction relief alleging newly discovered evidence which entitled him to a new trial. His "newly discovered evidence" was the testimony of a voice expert regarding the buy tape. The post-conviction court found that the evidence was inadmissible.

■ The admission or exclusion of evidence in a post-conviction proceeding is within the post-conviction court's sound discretion, and we defer to that court and will not disturb its ruling on review unless it has abused its discretion. *Badelle v. State*, 754 N.E.2d 510, 521 (Ind.Ct.App. 2001), *trans. denied.*

At the post-conviction hearing, Hyppolite sought to present the testimony of Dr. Robert Rodman regarding a voice analysis he had done of the tape recording of the October 18, 1996, drug transaction. The State objected to the admissibility of the testimony. Dr. Rodman appeared in court and gave testimony upon the admissibility of which the post-conviction court reserved judgment. Dr. Rodman testified that his voice analysis of the buy tape indicated that Hyppolite was not the man identified as the dealer on the tape. The post-conviction court gave both parties the opportunity to submit briefs regarding the foundation and admissibility of Dr. Rodman's testimony. Hyppolite never submitted a brief. The post-conviction court subsequently found in its order that the State's objections to the testimony were well-founded and refused to admit the testimony.

In *Cornett v. State*, 450 N.E.2d 498 (Ind. 1983), our supreme court held in a case of first impression that voice spectrography had not yet gained general acceptance in the scientific community and was not ad-

missible into evidence. *Id.* at 503. Nearly twenty years have passed since *Cornett* was handed down, and in those twenty years, major scientific advances could have been made in the field of voice analysis. Thus, we do not base our decision on the holding of *Cornett* alone, although it provides a baseline for our analysis. Nonetheless, Indiana Evidence Rule 702(b) states that "[e]xpert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable." Our supreme court has noted:

> The concerns driving *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)] coincide with the express requirement of Indiana Rule of Evidence 702(b) that the trial court be satisfied of the reliability of the scientific principles involved. Thus, although not binding upon the determination of the state evidentiary law issues, the federal evidence law of *Daubert* and its progeny is helpful to the bench and bar in applying Indiana Rule of Evidence 702(b).

*Steward v. State*, 652 N.E.2d 490, 498 (Ind. 1995). In *Daubert*, the Supreme Court held that for scientific knowledge to be admissible under Federal Evidence Rule 702, the trial court judge must determine that the evidence is based on reliable scientific methodology. *Id.* at 592–93, 113 S.Ct. 2786. To assist trial courts in making this determination, the Supreme Court outlined a non-exclusive list of factors that may be considered: whether the theory or technique can be or has been tested, whether the theory has been subjected to peer review and publication, whether there is a known or potential error rate, and whether the theory has been generally accepted within the relevant field of study. *Id.* at 593–95, 113 S.Ct. 2786.

■ Dr. Rodman offered testimony at the post-conviction hearing regarding his methods for conducting his voice analysis. He stated that he could not "speculate what other scientists would think [because] ... [t]he technology that we've developed ... is not widely known." Tr. at 119. In response to the post-conviction court's specific question that the method could not possibly be widely accepted because it was not yet widely known, Dr. Rodman said, "That is correct." *Id.* Thus, Hyppolite, as the proponent of the evidence, failed to demonstrate that the scientific principles upon which Dr. Rodman's testimony rested was reliable. He has failed to show that the post-conviction court erred in ruling this testimony inadmissible.

D. Ineffective Assistance of Counsel

Finally, Hyppolite contends that he was denied the effective assistance of trial counsel.

1. *Standard of Review*

■ In order to prevail upon a claim of ineffective assistance of counsel, a petitioner must demonstrate the two components established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Totten v. State*, 760 N.E.2d 1074, 1076 (Ind.Ct.App.2001), *trans. denied.* The petitioner must first establish that counsel's performance was deficient. In order to do this, the petitioner must show that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed to the defendant by the Sixth Amendment. *Wrinkles v. State*, 749 N.E.2d 1179, 1188 (Ind.2001), *cert. denied,* — U.S. —, 122 S.Ct. 1610, 152 L.Ed.2d 624 (2002). In addition, the petitioner must show that the deficient performance prejudiced the defense. *Id.* Because a petitioner must

prove both elements, the failure to prove either element defeats the claim. *Totten*, 760 N.E.2d at 1076.

### 2. Alleged Deficiencies

Hyppolite contends that his trial counsel was ineffective for failing to timely request or procure a voice analysis expert; for failing to sufficiently investigate the case in order to learn about the owner of the car used in the drug transaction; and for failing to call "Kojak" Fuller as a witness during his trial.

We have already determined that the post-conviction court did not err in finding the voice expert's proffered testimony to be inadmissible as scientifically unreliable. Therefore, Hyppolite has failed to show prejudice because the testimony likely would have been excluded at trial, as well.

■■■ There seems to be no dispute that the supplemental case report Officer Cole prepared with information regarding the Cadillac and the owner of the car was not provided to Hyppolite in discovery. Hyppolite's counsel did not depose Officer Cole prior to trial. Immediately upon hearing Officer Cole testify about the Cadillac and its owner, counsel moved for a continuance in order to investigate further. Upon being denied that continuance, counsel was provided the address and name of the registered owner and attempted to contact him. He was successful in getting the owner's mother into court to testify and presented to the jury testimony that the registered owner of the car had characteristics similar to the description of the dealer. Hyppolite speculates that the owner of the car might have been able to testify that Hyppolite was not in fact driving his car on the night of the drug transaction. Be that as it may, Hyppolite himself denied being involved in the drug transaction and in fact presented an alibi defense that he was not even in Indiana on the date in question. Thus, even if counsel should have investigated further, Hyppolite has failed to show he was prejudiced because counsel was able to elicit relevant evidence regarding the owner of the car and any other evidence the owner himself may or may not have been able to give would have been cumulative.

■■■ Finally, Fuller was also being prosecuted for dealing in cocaine at the time of Hyppolite's trial. He was subpoenaed to appear at Hyppolite's trial, but did not appear because his counsel told him that he could be incriminating himself through any testimony he would give. Thus, Hyppolite cannot show prejudice because had his counsel called Fuller, Fuller would have asserted his Fifth Amendment right and would not have given testimony anyway.

Hyppolite has failed to demonstrate that the post-conviction court erred in denying his petition for post-conviction relief on the ground of ineffective assistance.

### Conclusion

The trial court did not err in its admission of evidence. As Officer Cole's in-court identification of Hyppolite was independently supported, any error in the admission of his pre-trial identification was harmless. Hyppolite was not entitled to the non-statutory motions for continuance he sought, nor was he entitled to a mistrial or to have a juror replaced for misconduct. The evidence was sufficient to support his conviction, and he has failed to show error in the post-conviction court's denial of his petition for relief. Accordingly, his conviction is affirmed.

Affirmed.

RILEY and MATTINGLY–MAY, JJ., concur.