## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 15 2020, 8:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald E.C. Leicht
Peru, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tommy Lee Weir, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff,* | October 15, 2020 <br><br> Court of Appeals Case No. 20A-CR-184 <br><br> Appeal from the Howard Superior Court <br><br> The Honorable Hans S. Pate, Judge <br><br> Trial Court Cause No. 34D04-1903-F5-701 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Tommy Lee Weir was convicted of domestic battery resulting in bodily injury to a pregnant woman, a Level 5 felony, and the trial court sentenced him to serve four years. Weir appeals and raises one issue for our review which we restate as whether the admission of certain evidence denied him a fair trial. Concluding it did not, we affirm.

# Facts and Procedural History

[2] Weir and his wife, Angel, began experiencing marital problems in early 2019. Angel had an affair with another man, which she later disclosed to Weir, causing him to be extremely upset. On February 14, 2019, Angel learned that she was pregnant and, sometime thereafter, told Weir she was pregnant. At the time, Weir and Angel shared an apartment and children[1] together.

[3] On February 26, Angel was lying in her bed when Weir walked in with her phone and began yelling at her. Weir had hacked into Angel's Facebook account and sent a message to someone using her account. Angel wanted to read the message, so she grabbed the phone. Weir began acting "very strange[,] kicking the bed, looking down at his hands, kicking the bed again," and then "forcefully grab[bed]" the phone from her. Transcript, Volume I at 58. Weir then placed the phone on the windowsill, got into a "boxer stance[,]" and

---

[1] It is unclear from the record how many children the couple shares.

stated, "come on, let's go, let's go" while staring at Angel's stomach. *Id.* at 58, 60. Weir hit Angel in the mouth, picked her up, and threw her to the ground. Angel "had to use [her] arm to shield the baby." *Id.* at 59. As Angel tried to get up, Weir ran out of the bedroom with her cell phone. Frustrated, angry and scared, Angel walked into the living room, picked up a vase, and threw it, but away from Weir. She then went into the kitchen. Weir was "standing there looking at [her,]" so she grabbed a knife and told him, "you need to go." *Id.* at 63. Weir gave Angel her cell phone back and left the apartment. Weir and Angel continued to live together following the incident. During that time, they both worked at Red Lobster.

[4] On March 1, Officer Zachary Griffith of the Kokomo Police Department was dispatched to investigate an alleged domestic incident involving Weir and Angel that occurred outside of Red Lobster. After work, the two had begun arguing and shouting and an altercation over keys ensued. Angel decided to call the police because she "felt that [Weir] was getting too comfortable with putting his hands on [her]." *Id.* at 49. When Angel met with Officer Griffith, she disclosed the February 26 incident that occurred at her apartment. Angel completed a domestic violence affidavit detailing the circumstances of the February 26 incident.

[5] On March 6, the State charged Weir with domestic battery resulting in bodily injury to a pregnant woman, a Level 5 felony, for the February 26 incident. A jury trial was held on September 13. During direct examination, the State questioned Angel about reporting the incident:

[State]:        When did you call the police?

* * *

[Angel]:        March 1st.

[State]:        Where were you at that time?

[Angel]:        I was at Red Lobster.

[State]:        Why were you there?

[Angel]:        I worked there.

[State]:        Did [Weir] work there?

[Angel]:        Yes.

[State]:        And there was an incident after work. Is that fair?

[Angel]:        Yes.

[State]:        A shouting match?

[Angel]:        Yes.

[State]:        Eventually the police were called.

[Angel]:        Right.

[State]:        When, and you had an opportunity to talk to Officer Griffith right here, correct?

[Angel]:        Correct.

[State]:        Where did you talk to him?

[Angel]:        I had called him. I decided to, me and my friend decided to involve the police because we felt that he was getting too comfortable with putting his hands on me. I called, I waited for dispatch across from his mom's house.

[State]:        Okay. Why did you choose that place?

[Angel]:       Because at the same time after work, although I was crying and I was upset, I was thinking about my kids.  I tried to go to his aunt's house to get my children, but he already had my kids.  I figured that he would probably drive by his mom's house with my children.

[State]:       And you had a conversation with this officer there?

[Angel]:       Yes.

[State]:       And do you recall what you told him?

[Angel]:       Yes.  I told him that [Weir] *grabbed me up at work.*  It was over-

[Defense]      Judge, I am going to object to incidents that are not charged.

[Court]:       Okay.  Response?

[State]:       I'm fine with moving to strike that . . . answer.

[Court]:       Okay.  I'm going to sustain the objection and strike the answer.  Next question.

*Id.* at 48-50 (emphasis added).  Later, when answering another question, Angel again referenced the events on February 26 and March 1.  Weir objected and moved for a mistrial.  The trial court denied the motion, struck the references from the record, and admonished the jury to disregard Angel's answer.

[6]      During cross-examination, defense counsel questioned Angel about the information she disclosed to Officer Griffith:

[Defense]:      . . . Did you ever tell Officer Griffith you were worried about the children [being] with [Weir]?

[Angel]:      Yes

* * *

[Defense]:    When did you tell him that?

[Angel]:      That same night.

[Defense]:    And you were worried because he would hurt them
              or because he would keep them?

[Angel]:      Hurt and I . . . have been physically and mentally-

* * *

[Defense]:    [Y]ou believe that [Weir] was going to hurt the
              children, yes or no?

[Angel]:      I have two daughters.  [Weir]-

[Defense]:    Yes or no.  Do you believe he was going to hurt the
              children?

[Angel]:      -in a sexual possible way.

* * *

[Defense]:    You never told Officer Griffith you were worried
              about any sexual contact, were you?

[Angel]:      I mentioned that-

[Defense]:    Did you say sexual contact?

[Angel]:      -not him touching my kids.  I'm giving up the fact
              that even though he picked me up and slammed me,
              *there was also sexual abuse towards me-*

[Defense]:    Hold on.

[Angel]:      -I have two daughters.

[Defense]:    Judge, I am going to ask that that be stricken as
              unresponsive.  These are yes or no questions.

> [Court]: I'm going to . . . order that . . . the last response be stricken from the evidence. It's not responsive. . . .

*Id.* at 76-77 (emphasis added). Later, during the State's redirect examination, Angel testified that she became concerned about her children's safety on February 26 and March 1 and stated that "[a]s a mom, you gotta defend your kids." *Id.* at 83. Weir did not object.

[7] Following the presentation of evidence, the jury found Weir guilty as charged and the trial court entered judgment of conviction. The trial court sentenced Weir to four years, nine days of which to be served in the Department of Correction with the remaining days to be served on supervised probation. Weir now appeals.

# Discussion and Decision

## I. Standard of Review

[8] Our standard of review in this area is well settled. We review the admission or exclusion of evidence for an abuse of discretion. *Troutner v. State*, 951 N.E.2d 603, 611 (Ind. Ct. App. 2011), *trans. denied*. An abuse of discretion occurs when a trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Iqbal v. State*, 805 N.E.2d 401, 406 (Ind. Ct. App. 2004).

# II. Admission of Evidence

Weir argues that the admission of testimony concerning the alleged March 1 altercation at Red Lobster and Angel's reasons for keeping her children from Weir violated Indiana Evidence Rule 404(b) and denied him a fair trial. We disagree.

Rule 404(b)(1) prohibits the admission of evidence "of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

On direct examination, Angel testified that she contacted the police on March 1. When asked by the State whether she recalled what she told Officer Griffith, she stated, "Yes. I told him that [Weir] grabbed me up at work." Tr., Vol. I at 49. Weir objected on the basis that the statement concerned an alleged incident for which he was not charged. The State agreed and the trial court sustained the objection and struck the reference. After Angel again referenced the March 1 events, Weir objected, and the trial court struck the reference and admonished the jury to disregard the statement. Later, the trial court also struck Angel's reference regarding her alleged sexual abuse. Our supreme court has held that "[a] timely and accurate admonition is presumed to cure any error in the admission of evidence." *Banks v. State*, 761 N.E.2d 403, 405 (Ind. 2002). Here, because the trial court struck the statements and immediately admonished the jury to not consider Angel's answer, any error in these admissions was cured.

[12] Although Weir acknowledges that the trial court struck these statements, he argues that the cumulative effect of their admission, as well as other statements, denied him a fair trial. Weir also takes issue with Angel's testimony that she was concerned Weir may harm the children "in a sexual possible way." Tr., Vol. I at 76. However, Weir did not object to this reference or request an admonishment to the jury. Therefore, the issue is waived unless he can show fundamental error. *Hyppolite v. State*, 774 N.E.2d 584, 594 (Ind. Ct. App. 2002), *trans. denied*. "The fundamental error doctrine applies only when the actual or potential harm cannot be denied and the error is so prejudicial to the rights of the defendant that a fair trial is impossible." *Id.* Moreover, the "improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Lafayette v. State*, 917 N.E.2d 660, 666 (Ind. 2009).

[13] In this case, the testimony concerning the alleged altercation at Red Lobster and Angel's reasons for keeping Weir from the children were brief, vague, and ultimately struck from the record, with the exception of Angel's concern that Weir may sexually abuse the children. We do not believe that any error in the admission of this evidence was so highly prejudicial to Weir as to render a fair trial on battery charges impossible. And given the substantial evidence of Weir's guilt, any error in its admission was harmless. Angel testified that, on February 26, she was in her bed when Weir came in to the room, started yelling, and ultimately hit her in the face and picked her up and slammed her to

the ground, which caused her pain. *See* Ind. Code § 35-42-2-1.3(a)(1), (c)(3) (2016). This is substantial independent evidence of Weir's guilt and therefore, it is unlikely that the admission of the challenged testimony contributed to Weir's conviction.

# Conclusion

We conclude that the admission of Rule 404(b) evidence, most of which was struck by the trial court, did not deprive Weir of a fair trial and any error was harmless. Accordingly, we affirm.

Affirmed.

Crone, J., and Brown, J., concur.