Richard D. SWIGEART, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 48S00–9909–CR–480.

Supreme Court of Indiana.

June 28, 2001.

Anthony C. Lawrence, Anderson, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Adam M. Dulik, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Richard Swigeart attacked and injured Cheryl Graggs during an attempt to rob a liquor store. We uphold his convictions for attempted robbery, battery, and criminal confinement. In doing so, we find that the trial court properly excluded photographs because the use of a telephoto lens may have made them misleading. And we find the circumstances supported a witness's in-court identification of Defendant.

## Background

The facts most favorable to the judgment indicate that just after midnight on May 31, 1998, Defendant and his son, Dennis, attacked Cheryl Graggs as she was leaving work. Defendant and Dennis went in Defendant's truck to Cain's liquor store "to rob the lady that was working there." Defendant was armed with a BB gun, and Dennis had a stun gun. As Graggs closed the store and went to her car, Defendant and Dennis attacked her. Defendant put his arm around her and "put the BB gun to her like it was a real pistol." Dennis then demanded money from Graggs. Graggs then started screaming, at which point Defendant hit her in the head with the gun and forced her around to the back of the building. As Defendant was pulling Graggs to the back of the building, Dennis stunned her with the stun gun. Defendant and Dennis beat Graggs and began restraining her with tape, but fled when some people approached in a car.

Soon after the attack, Officer Mark McCann was dispatched to the area of the attack to look for the suspects. Officer McCann stopped Dennis on the street,

questioned him, and took him into custody. As Officer McCann was returning to the police station with Dennis, he passed a person that he later identified as Defendant. As Officer McCann was turning a corner, he spotted an individual walking through a parking lot, but because he did not know that the subject was also a participant in the crime, he did not immediately report seeing anyone. The next day, however, Officer McCann returned to the police station because he wanted to make sure that somebody had "identified or somebody had [known] about the subject that [he had] seen." Officer McCann spoke to Detective Gary Copeland and described the person that he had seen and said that he could recognize the individual if he saw a picture. Later that day, Officer McCann identified Defendant from a photograph.

Defendant was convicted of Attempted Robbery, a Class A felony,[1] Battery, a Class C felony,[2] Criminal Confinement, a Class B felony,[3] and Defendant pled guilty to being a habitual offender.[4] The trial court sentenced Defendant to 50 years for the attempted robbery,[5] eight years for battery, and 20 years for criminal confinement, to be served concurrently.

## Discussion

### I

Defendant contends that the trial court abused its discretion by excluding certain photographic evidence. *See* Appellant's Br. at 9.

At trial, Defendant sought to introduce a series of photographs, Exhibits 16 through 19, into evidence to "depict the

---

1. Ind.Code §§ 35–42–5–1 and 35–41–5–1(1993).

2. *Id.* § 35–42–2–1 (1997).

3. *Id.* § 35–42–3–3 (1993).

4. *Id.* § 35–50–2–8 (Supp.1997).

5. The sentence for the robbery conviction was enhanced by 30 years according to the habitual offender statute.

angle that the Defendant was traveling on foot." Appellant's Br. at 9. The trial court sustained the State's objections to Defendant's exhibits 17 and 19. On appeal, Defendant argues that the photographs were significant because they "demonstrated the angle at which Officer McCann allegedly observed [Defendant] walking near the crime scene" as Officer McCann passed by in his car. Appellant's Br. at 9.

Exhibits 16 through 19 were all photographs depicting an individual, other than Defendant, standing in the parking lot. Exhibits 16 and 17 were almost identical pictures of the individual, but each taken with a different lens. Exhibit 16, taken with a 35–millimeter camera, displayed the individual standing in the parking lot with the person's back to the camera. Exhibit 17 was taken of the same person in nearly the same position, but the picture was taken from the street with a wide-angle telephoto lens.

Exhibits 18 and 19 were also nearly identical. Exhibit 18, taken with a 35–millimeter camera, shows a person standing in the parking lot facing away from the camera, at an angle, with the person's face turned toward the camera. Exhibit 19 shows the same person at the same angle, but was taken with a wide-angle telephoto lens.

█ Granting the State's request, the trial court excluded Exhibits 17 and 19. The State objected after Defendant's witness disclosed that the photographs had been taken with a wide-angle telephoto lens. Although the trial court excluded the evidence without comment, it is likely that the trial court excluded the photographs on these grounds. Even where a trial court does not state the ground on which it excluded evidence, a reviewing court may sustain an evidentiary ruling if it can do so on any theory consistent with the evidence presented. *See Reaves v. State*, 586 N.E.2d 847, 857 (Ind.1992).

█ The admission or exclusion of photographic evidence lies within the trial court's discretion. *See Robinson v. State*, 693 N.E.2d 548, 553 (Ind.1998). We will not reverse the trial court's ruling absent an abuse of discretion. *Id.* "The law approves of the use of photographs to prove the existence and nature of relevant physical objects and scenes so long as they are true and accurate." *See Patel v. State*, 533 N.E.2d 580, 583 (1989); *Boyd v. State* 494 N.E.2d 284, 295 (Ind.1986), *cert. denied* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987). "The purpose of such photographs is to aid the jury in visualizing the scene as described in testimony." *Patel*, 533 N.E.2d at 583.

The trial court most likely excluded the exhibits because they were not a "true and accurate" depiction Officer McCann's view of Defendant in the parking lot. Both of the excluded photographs were taken with a wide-angle telephoto lens and therefore presented an enhanced view of what Officer McCann could have seen. Defendant offered the evidence to "demonstrate[ ] the angle at which Officer McCann allegedly observed [Defendant] walking." Appellant's Br. at 9. There is no apparent reason that the jury needed to see a magnified photograph. If Defendant intended to show the jury what Officer McCann would have seen from his car, then the pictures taken with the wide-angle telephoto lens could well have been misleading. The trial court did not abuse its discretion by excluding Exhibits 17 and 19. Furthermore, Exhibits 17 and 19 were almost identical to 16 and 18, making them cumulative.

## II

█ Defendant argues that Officer McCann's pre-trial identification was the result of an unduly suggestive police pro-

cedure. He contends that the pre-trial identification tainted his in-court identification, thereby violating his due process rights. *See* Appellant's Br. at 12.

The day after the attack, Officer McCann identified Defendant from a photograph as the man he had seen in the vicinity of the liquor store soon after the attack. Evidence of this initial identification was never introduced at trial. In his testimony, however, Officer McCann did identify Defendant as the man he had seen in the vicinity of the attack.

The day after the attack, Officer McCann told Detective Copeland that he had observed another subject on the scene the previous night. Officer McCann testified that he described the person to Detective Copeland as "a male white, approximately forty to fifty years of age, dark long black hair, tattoos on both arms, no shirt on, ... and possibly a goatee." (R. at 480–81.) Officer McCann told Detective Copeland that he could identify the individual if he saw a picture.

Officer McCann was able to identify Defendant from a picture as the man that he had seen on the night of the attack. His identification of Defendant, however, was not done according to normal procedures. Detective Copeland testified that typically, a witness is shown a photo array containing photographs of six different individuals from which the witness can identify a suspect. According to Officer McCann, he walked into Detective Copeland's office and saw a picture of Defendant on his desk. Defendant's picture was lying on the desk with two pictures of Dennis McCann. Officer McCann immediately recognized Defendant and stated, "that's the guy." Detective Copeland testified that the identification was not done with a photo array because Officer McCann had come into his office unexpectedly.

■ The Due Process Clause of the Fourteenth Amendment requires suppres-sion of testimony concerning a pre-trial identification when the procedure employed is impermissibly suggestive. *See Harris v. State*, 716 N.E.2d 406, 410 (Ind. 1999); *Parker v. State*, 698 N.E.2d 737, 740 (Ind.1998); *James v. State*, 613 N.E.2d 15, 27 (Ind.1993). A photographic array is impermissibly suggestive if it raises a substantial likelihood of misidentification given the totality of the circumstances. *See Harris*, 716 N.E.2d at 410. A pre-trial identification may occur in a manner so suggestive and conducive to mistaken identification that permitting a witness to identify a defendant at trial would violate the Due Process Clause. *See Young v. State*, 700 N.E.2d 1143, 1146 (Ind.1998). Nevertheless, a witness who participates in an improper pretrial identification procedure may still identify a defendant in court if the totality of the circumstances shows clearly and convincingly that the witness has an independent basis for the in-court identification. *Id.*

■ To determine whether a witness had an independent bases for the in-court identification, we consider the following factors: The amount of time the witness was in the presence of the defendant; the distance between the two; the lighting conditions; the witness' degree of attention to the defendant; the witness' capacity for observation; the witness' opportunity to perceive particular characteristics of the perpetrator; the accuracy of any prior description of the perpetrator by the witness; the witness' level of certainty at the pretrial identification; and the length of time between the crime and the identification. *See Utley v. State*, 589 N.E.2d 232, 238 (Ind.1992), *cert. denied*, 506 U.S. 1058, 113 S.Ct. 991, 122 L.Ed.2d 142 (1993).

The State did not introduce evidence of Officer McCann's identification of Defendant at the police station. It is Defendant's contention, however, that Officer

McCann's identification of Defendant at the police station was so suggestive that it violated Due Process to allow .Officer McCann to identify Defendant at trial. Officer McCann, however, had an independent basis for his in-court identification of Defendant. As Officer McCann was driving toward the police station, he saw Defendant from a close distance. Officer McCann testified that he saw Defendant in the vicinity of the crime scene for approximately six to eight seconds as Defendant was walking in a well-lit parking lot. Prior to seeing the photograph of Defendant, Officer McCann described Defendant as being a white man, approximately forty to fifty years old, with long black hair, tattoos on both arms, no shirt on, and a goatee. Officer McCann testified that he watched Defendant until he was out of sight.

We find that the totality of the circumstances shows clearly and convincingly that Officer McCann had an independent basis for his in-court identification. Although it is irrelevant in the analysis of whether the identification was valid, other evidence in the case also pointed to Defendant as perpetrator. Most notably, Defendant's son, Dennis, testified regarding Defendant's involvement in the attack. Defendant's palm print was also found on an air conditioner unit that sat next to where the attack occurred. McCann's identification was cumulative of other substantial probative evidence of identification.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, and BOEHM, JJ., concur.

RUCKER, J., concurs in result.