**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 02 2014, 8:50 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LISA M. JOHNSON**
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHARICO BLAKELY, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1308-PC-313 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Wendy W. Davis, Judge
Cause No. 02D04-1202-PC-20 (02D04-0609-FA-52)

**April 2, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Sharico Blakely appeals the post-conviction court's denial of his second amended petition for post-conviction relief. Blakely raises two issues for our review:

1. Whether he received ineffective assistance of trial counsel.

2. Whether he received ineffective assistance of appellate counsel.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

The facts underlying Blakely's convictions for three counts of dealing in cocaine and one count of possession of cocaine with intent to deliver, all as Class A felonies, were set out in his direct appeal:

> In May 2006, a confidential informant ("CI") in Allen County, Indiana[,] agreed to work with the police after drugs were recovered from his house. The CI told police that he knew his supplier by the name of "Rico" [Watson]. Tr. at 177. The CI gave police a general description of Blakely's build and vehicle, a maroon Oldsmobile.
>
> The police had the CI contact Blakely through his cell phone number[] to arrange for the purchase of an ounce of cocaine and to cover a debt he owed from past deals. On May 3, 9, and 18, 2006, the police searched the CI and his vehicle, the CI was given buy money by the police, and he was briefed on how to execute the deals. On May 3, Blakely told the CI to meet him at the Willow Creek Crossing Apartments. When the CI arrived with Detective Jack Cain, he spotted Blakely and three others in a Toyota. The CI exited his vehicle and walked over to Blakely and noticed the female in Blakely's vehicle was counting a substantial amount of cash. The CI gave Blakely the buy money, and Blakely handed the CI a bag containing "a big white piece of cocaine." Tr. at 191. The CI returned to Detective Cain, and the two returned to the Allen County Sheriff's Department where detectives searched the CI again. After the buy was completed, Detective Stephen Haxby followed Blakely's vehicle to a duplex located in Pointe Center Cove. Laboratory tests confirmed that the substance purchased by the CI was 25.87 grams of cocaine.

On May 9, 2006, the CI again arranged to purchase cocaine from Blakely. Blakely, accompanied by the same three companions, was in his maroon Oldsmobile. The CI purchased two separate bags of cocaine, and the police undertook the same recovery procedure and confirmed that both bags contained cocaine and that one bag weighed 22.75 grams, and the other weighed 26.14 grams.

On May 18, 2006, the police met the CI to arrange for another cocaine purchase. The police wired the CI and gave him cash to complete the deal. The CI contacted Blakely to organize the purchase of a half-ounce of cocaine and to pay the remainder due for the extra amount of cocaine the CI received from Blakely during the previous deal. Blakely told the CI to meet him at a gas station. This time, Blakely was in a blue minivan and told the CI to get in the minivan. The CI gave Blakely the money, and Blakely gave the CI the cocaine and told the CI that he would call him in ten minutes. The police recovered the cocaine under the same procedure and laboratory testing confirmed that the substance was 10.94 grams of cocaine. The blue minivan returned to Pointe Center Cove. On May 22, 2006, Blakely was arrested and his vehicle and residence were searched. The police recovered several cell phones, scales, a firearm, and more cocaine, some of which was separated into small clear bags.

On September 26, 2006, Blakely was charged with four counts of Class A felony dealing in cocaine, one count of Class D felony possession of a controlled substance, and one count of Class D felony possession of marijuana. On January 30, 2007, just prior to trial, the State dismissed the Class D felony counts and amended the date of Count IV. Because the trial court found the change to be of form and not substance, it accepted the amendment over Blakely's objection. Blakely's case proceeded to trial, and a jury found Blakely guilty on all counts. At sentencing, the trial court found Blakely's criminal history, probation revocations, and lack of remorse were aggravating factors. The trial court sentenced Blakely to fifty years executed for all four counts with Counts I through III running concurrently[] and Count IV running consecutive[] to counts I through III[,] for a total executed sentence of one hundred years.

Blakely v. State, No. 02A05-0704-CR-222, slip op. at *2-*4 (Ind. Ct. App. May 20, 2008) ("Blakely I"). A man named Rico Watson, who also generally fit the CI's description of the supplier, testified at Blakely's trial that he was not involved in any of the CI's drug transactions. In particular, Watson testified that he did not know anyone in

Fort Wayne and that he did not fit the CI's description of "Rico" because he had been bald his whole life.

On direct appeal, Blakely argued that the evidence was insufficient to support his convictions and that his sentence was inappropriate in light of the nature of the offenses and his character. We affirmed his convictions but found his one-hundred-year sentence inappropriate under Appellate Rule 7(B). We revised the sentence to "thirty years on all counts, with the sentences for dealing in cocaine to run concurrently and the sentence for possession of cocaine with intent to deliver to run consecutive to the others, for an aggregate sentence of sixty years." Id. at *8.

On February 15, 2012, Blakely filed a petition for post-conviction relief, and he filed amendments to the petition on July 18 and December 12. The post-conviction court held a hearing on Blakely's amended petition on December 17, 2013. And on July 24, 2013, the trial court entered a lengthy order, with special findings and conclusions thereon, denying the petition. Blakely now appeals.

**DISCUSSION AND DECISION**

Blakely appeals the post-conviction court's denial of his second amended petition for post-conviction relief. Our standard of review is clear:

> [The petitioner] bore the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence. See Ind. Post-Conviction Rule 1(5); Timberlake v. State, 753 N.E.2d 591, 597 (Ind. 2001). Post-conviction procedures do not afford a petitioner with a super-appeal, and not all issues are available. Timberlake, 753 N.E.2d at 597. Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. Id. If an issue was known and available, but not raised on direct appeal, it is waived. Id. If it was raised on appeal, but decided adversely, it is res judicata. Id.

4

In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the post-conviction court's judgment. Hall v. State, 849 N.E.2d 466, 468 (Ind. 2006). The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. Id. at 468-69. Because he is now appealing from a negative judgment, to the extent his appeal turns on factual issues [the petitioner] must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. See Timberlake, 753 N.E.2d at 597. We will disturb the decision only if the evidence is without conflict and leads only to a conclusion contrary to the result of the post-conviction court. Id.

Lindsey v. State, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), trans. denied.

When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Overstreet v. State, 877 N.E.2d 144, 151 (Ind. 2007) (citation omitted). To prevail from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. (citation omitted). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). "Although we do not defer to the post-conviction court's legal conclusions, '[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made.'" Id. (citation omitted).

Blakely contends that he was denied the effective assistance of trial and appellate counsel in violation of the Sixth Amendment to the United States Constitution. A claim of ineffective assistance of counsel must satisfy two components. Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show deficient performance:

5

representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. Id. at 687-88. Second, the defendant must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694.

**Issue One:  Effective Assistance of Trial Counsel**

Blakely first contends that his trial counsel rendered ineffective assistance. Specifically, Blakely argues that his trial counsel failed to:  (1) move to suppress an "unduly suggestive" pre-trial identification of Blakely by the CI, Appellant's App. at 25; (2) object to the in-court identification of Blakely, which was purportedly tainted by the CI's pre-trial identification; (3) impeach Watson's testimony; (4) discuss exculpatory evidence in closing; and (5) object to a remark the State made in closing. He also argues (6) that the cumulative effect of these errors warrants post-conviction relief. And Blakely asserts that (7) his counsel was ineffective at the sentencing phase for several additional reasons. We consider each contention in turn.

### 1. & 2.  Identification of Suspect

The first two issues Blakely raises pertain to the CI's pre-trial and in-court identification of him as the CI's cocaine supplier. As we have explained:

> The identification of a defendant must comport with the standards of due process. If an out-of-court identification procedure was unduly suggestive, then the testimony relating to it is inadmissible. In essence, this court must determine whether, under the totality of the circumstances, the identification process was conducted in such a manner that it created a

substantial likelihood of irreparable misidentification. Our supreme court has held that a photo array is impermissibly suggestive only where the array is accompanied by verbal communications or the photographs in the display include graphic characteristics that distinguish and emphasize the defendant's photograph in an unusually suggestive manner.

When analyzing the propriety of the pre-trial identification procedure here, the first issue we must address is whether the out-of-court procedure was conducted in a fashion that led the witness to make a mistaken identification. If it is unduly suggestive, we then address the second question, which is whether the witness had an independent basis for the in-court identification so as to make it admissible.

Allen v. State, 813 N.E.2d 349, 360 (Ind. Ct. App. 2004), trans. denied.

Blakely contends that trial counsel should have moved to suppress the pre-trial identification because it was "unduly suggestive." Appellant's Br. at 24. But we need not reach this issue. Even if we were to assume that the pretrial identification procedure were unnecessarily suggestive, the admission of the in-court identification of Blakely was proper if, under the totality of circumstances, it was supported by a basis independent from the pretrial procedure. See Swigeart v. State, 749 N.E.2d 540, 544 (Ind. 2001). We conclude that such is the case here.

To determine whether a witness had an independent basis for the in-court identification, we consider the following factors:

The amount of time the witness was in the presence of the defendant; the distance between the two; the lighting conditions; the witness' degree of attention to the defendant; the witness' capacity for observation; the witness' opportunity to perceive particular characteristics of the perpetrator; the accuracy of any prior description of the perpetrator by the witness; the witness' level of certainty at the pretrial identification; and the length of time between the crime and the identification.

Id. (citation omitted).  Here, the CI had purchased drugs from Blakely for more than a year before he participated in the controlled buys on May 3, 9, and 18, 2006.  At each of the controlled buys, the two men engaged in face-to-face conversation in or near a vehicle and were close enough to each other to exchange cash for the contraband.  Thereafter, at trial, the CI unequivocally identified Blakely as the person from whom he had made the controlled buys.  As such, the witness had an independent basis for his in-court identification of Blakely, and any error in the pretrial identification procedure was harmless.  See id.

Still, Blakely argues that the CI's identification of Blakely at trial is not reliable.  Before the controlled buys, the CI gave a general description of his supplier as a person he knew only as "Rico," an African-American male between five feet five inches and five feet eight inches tall, weighing two hundred fifty pounds, with dreadlocks almost down to his shoulders, between thirty-five and forty years old, and who occasionally drove a red Oldsmobile Alero.  Blakely argues that that description "bore little resemblance to [Blakely's] physical characteristics" because his hair was in cornrows and he was twenty-seven years old at the time of his arrest, he is five feet eight inches tall and weighs less than two hundred pounds.  Appellant's Br. at 24.

But this argument goes to the weight of the CI's testimony, not its admissibility.  See Stowers v. State, 657 N.E.2d 194, 200 (Ind. Ct. App. 1995), trans. denied.  And, again, the CI's general description of his supplier before the controlled buys was superseded by his actual identification of Blakely as the person from whom he made the

8

controlled buys.  We will not reweigh this evidence on appeal.  See Lindsey, 888 N.E.2d at 322.  Blakely's arguments must fail.

### 3.  Impeachment of Witness

Blakely next contends that his trial counsel was ineffective because he did not impeach Watson's testimony at trial.  In particular, Blakely argues that his trial counsel should have used Watson's 2005 domestic battery conviction and his employment in Fort Wayne to impeach Watson's testimony that he did not know anyone in town.  He argues further that counsel should have used a photo of Watson with short hair to impeach Watson's testimony that he had been bald all his life.  We cannot agree.

First, Blakely argues that his trial counsel was ineffective because he failed to impeach Watson on the issue of whether he knew anyone in the Fort Wayne area by offering evidence of Watson's 2005 domestic battery conviction.  But Blakely does not show or even argue that the victim in the domestic battery victim was a resident of Fort Wayne or that Watson had any friendships with area residents from his employment in Fort Wayne.  And, in any event, the CI in this case was not an Indiana resident.  Given these facts, Blakely has not shown how Watson's prior conviction is relevant.

Second, Blakely has not shown that he was prejudiced by his trial counsel's failure to impeach Watson regarding his hair.  Blakely contends that the outcome of the trial would have been different if his trial counsel had impeached Watson's testimony that he had been bald all his life by showing a photo of Watson with "short" hair.  Appellant's Br. at 30.  But the photo of Watson shows only that he had a dark line around the top of his head suggesting that he may have had extremely short hair on the back side of his

9

head only. Blakely has not shown that Watson ever had or was able to wear his hair in dreadlocks or cornrows, and, before the controlled buys, the CI had described his supplier as wearing his hair in dreadlocks. The CI later testified that during the controlled buys the supplier's hair had been cut off. At the time of his arrest a few days after the third controlled buy, Blakely was wearing his hair in cornrows. Blakely cannot show that Watson's testimony would have been impeached based on the length of his hair or that the result of his proceeding would have been different had his counsel raised this purported issue.

### 4. Exculpatory Evidence

Blakely next argues that his trial counsel was deficient because he did not present and argue certain allegedly exculpatory evidence. Specifically, he contends that his trial counsel should have presented evidence that Blakely's height and weight did not match the CI's description, that Blakely never had a brother though the supplier had told the CI that his brother had died, and that the officer who participated in the arrest did not observe any scars or injuries on Blakely's arm although it had been wrapped in a towel during one of the controlled buys. Blakely argues that, if his trial "counsel had presented the available exculpatory evidence, he could have shown the jury facts which were inconsistent with Blakely's guilt." Appellant's Br. at 35.

With regard to evidence on the identity of the supplier, again, before the controlled buys the CI gave a general description of his supplier as an African-American male he knew as "Rico" who was between five feet five inches and five feet eight inches tall, weighed two hundred fifty pounds, wore dreadlocks almost down to his shoulders, and

10

was between thirty-five and forty years old. Blakely has not shown that the CI's description was so off the mark that Blakely's trial would have turned out differently if his counsel had shown and argued the discrepancies. And, in any case, the jury was able to see those discrepancies for itself.

Nor has Blakely shown that the outcome of his trial would have been different if his attorney had offered evidence that Blakely never had a brother. The CI testified only that his supplier had told him that his brother had died. The CI did not testify that he knew or had met the CI's brother. As such, any evidence or argument regarding the existence or death of Blakely's brother would have had no effect on Blakely's trial.

Finally, regarding the alleged injury to Blakely's arm, the CI testified that he had seen Blakely with a towel wrapped around his arm about three weeks before the arrest. But he had not seen Blakely's arm and did not know for certain why it was wrapped in a towel. The CI did not identify Blakely by any distinguishing features on his arm. Testimony or argument that the arresting officer did not observe any injury to Blakely's arm at the time of the arrest three weeks later would have been of little if any value at trial. Blakely has not shown that he was prejudiced by his trial counsel's failure to present or argue this allegedly exculpatory evidence.

### 5. State's Misleading Argument

Blakely next contends that his trial counsel was ineffective because he did not object or respond to a misleading comment the State made during closing argument. Specifically, he argues that the State misled the jury when it argued:

11

> You saw Rico Watson here, by the way, didn't you? Rico Watson came in to testify. He didn't have any problem coming in to testify. You'd think if a real drug dealer—do you think that they would actually make an appearance in court? Seriously? No, because Rico Watson wasn't the drug dealer.

Trial Transcript at 528. Blakely argues that that part of the State's closing was "inaccurate, misleading, and prejudicial" because it "left the jury with the impression that Rico Watson came to court voluntarily when the State had the power to compel his testimony with a subpoena." Appellant's Br. at 36. He also asserts that "there was no evidence that Watson came to court voluntarily instead of being subpoenaed." Id.

In support, Blakely cites, without analysis or explanation, a Utah decision, State v. King, 248 P.3d 984, 994 (Utah Ct. App. 2010). But that opinion provides neither binding authority nor support for Blakely's contention. In any event, here, the evidence as a whole shows that the CI identified Blakely as his supplier after buying cocaine from him for more than one year, including three controlled buys the month of Blakely's arrest. The phone number the CI used to reach his supplier was found in Blakely's possession, and the CI testified that the supplier from the three controlled buys was Blakely. While the State's implication during closing that Watson had testified voluntarily was unsupported by evidence at trial, given the overall evidence supporting Blakely's conviction, we cannot say that the outcome of his trial would have been different if his trial counsel had objected to that statement. As such, Blakely has not shown that he was prejudiced by his trial counsel's failure to object to the prosecutor's statement.

12

## 6.  Cumulative Effect of Alleged Errors

Blakely also argues that the cumulative effect of the errors discussed above rendered his trial counsel's performance ineffective.  Because we conclude that Blakely has not demonstrated his trial counsel was ineffective for any of the reasons he alleges, he cannot show ineffective assistance based on the cumulative effect of any alleged errors. See Kubsch v. State, 934 N.E.2d 1138, 1154 (Ind. 2010).

## 7.  Sentencing

Blakely next contends that his trial counsel was ineffective at the sentencing phase because he failed to:  advise Blakely about proper decorum during sentencing; conduct any investigation into mitigating circumstances; present any evidence of mitigating circumstances; point out to the sentencing court mitigating circumstances in the PSI; or point out that the probation department had recommended a forty-year sentence.  Again, we cannot agree with Blakely.

Even if we were to assume for the sake of argument that Blakely's trial counsel was ineffective at the sentencing phase in any or all of the ways he alleges, Blakely has not shown that he was prejudiced as a result.  First, Blakely cannot cite any authority that would have required the trial court give any weight to any of his perceived mitigating or aggravating circumstances.  Second, we reduced Blakely's sentence in his direct appeal. See Blakely I, No. 02A05-0704-CR-222, at *8.  We agree with the State that there is no reason for this court to now believe that Blakely's reduced sentence "would ultimately have been less than the sixty years this Court reduced his sentence to" in light of Blakely's present concerns.  Appellee's Br. at 25; see McCann v. State, 854 N.E.2d 905,

13

909 (Ind. Ct. App. 2006) (citation omitted).  Therefore, Blakely cannot show that he was prejudiced by his counsel's performance at this phase of the proceedings.

## Issue Two:  Effective Assistance of Appellate Counsel

We next consider Blakely's argument that he was denied the effective assistance of appellate counsel.  In particular, he contends that his counsel on direct appeal inadequately argued that the evidence was insufficient to support one of his convictions and failed to argue that the sentences on all four counts had to be concurrent.  We address each argument in turn.

Blakely first argues that his counsel on direct appeal was ineffective because he did not adequately argue the insufficiency of evidence to support his conviction for possession of cocaine with intent to deliver, as a Class A felony.[1]  Specifically, he points out that he did not have actual or exclusive possession of the cocaine, and he lists specific arguments that his counsel should have made to show that the State failed to prove constructive possession of the contraband.  The State counters that Blakely's counsel on direct appeal "adequately set forth the law in this area[.]"  Appellee's Brief at 29.  We agree with the State.

Claims of inadequate presentation of certain issues, as contrasted with the denial of access to an appeal or waiver of issues, are the most difficult for defendants to advance and reviewing tribunals to support.  Henley v. State, 881 N.E.2d 639, 653 (Ind. 2008) (citation omitted).  "And this is so because such claims essentially require the reviewing

---

[1]  Blakely does not challenge his appellate counsel's performance with regard to his convictions on the first three counts of dealing in cocaine, as Class A felonies.

14

court to reexamine and take another look at specific issues it has already adjudicated to determine 'whether the new record citations, case references, or arguments would have had any marginal effect on their previous decision.'" Id. (quoting Bieghler v. State, 690 N.E.2d 188, 195 (Ind. 1997)).

Here, Blakely contends that his counsel on direct appeal did not adequately argue the insufficiency of evidence to support his conviction for possession of cocaine with intent to deliver, as a Class A felony, because he failed to note four pieces of specific evidence. But our review of Blakely's brief on direct appeal shows that Blakely's counsel adequately argued the question of exclusive possession. We cannot say that the additional pieces of evidence cited by Blakely here would have had any marginal effect on this court's decision in the direct appeal. See id. While Blakely may argue in post-conviction that his appellate counsel failed to adequately argue sufficient evidence on direct appeal, to the extent Blakely is again challenging the sufficiency of evidence to support his conviction for Count IV res judicata bars further review in these proceedings. See id. at 644. Blakely has not shown the ineffective assistance of his appellate counsel regarding the sufficiency of evidence on Count IV.

Finally, Blakely contends that his counsel on direct appeal was ineffective because his counsel did not challenge the trial court's imposition of consecutive sentences. Blakely argues that, under Beno v. State, 581 N.E.2d 922 (Ind. 1991), all four of Blakely's sentences should have been ordered to be served concurrently. In Beno, our supreme court held that it was improper to impose consecutive sentences for multiple

15

convictions for drug-dealing where the convictions were based on nearly identical state-sponsored buys. Id. at 924.

But Blakely's four convictions were not each the product of a state-sponsored drug buy. Rather, as in Iddings v. State, 772 N.E.2d 1006, 1019 (Ind. Ct. App. 2002), trans. denied, Blakely's convictions for Count I, Count II, and Count III were the product of state-sponsored buys, and in his direct appeal this court ordered the sentences for his convictions on those counts to run concurrently. But Blakely's conviction on Count IV, the sentence which this court ordered to be served consecutive to his sentence for his other convictions, was based on evidence seized after the State executed its search warrant. Thus, the sentence this court crafted on direct appeal was consistent with Iddings, and Blakely cannot argue that his appellate counsel was ineffective for arguing contrary to that precedent. Moreover, Blakely received a forty-year reduction in his sentence on direct appeal. He has not shown that any different performance by his appellate counsel would have resulted in a greater sentence reduction than the forty years his counsel successfully achieved. As such, Blakely has not shown prejudice from his appellate counsel's allegedly deficient performance.

### Conclusion

In sum, we affirm the judgment of the post-conviction court.

Affirmed.

BAKER, J., and CRONE, J., concur.

16